IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN W. CROMEANS, JR., Individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.: 2:12-CV-04269-NKL ) |
| MORGAN KEEGAN & COMPANY, INC., REGIONS BANK, INC., and ARMSTRONG TEASDALE, LLP, | ) ) ) ) |
| Defendants. | ) ) ) |

**ORDER**

Pending before the Court is a Motion to Recuse brought by Defendant Morgan Keegan & Company, Inc. [Doc. # 82]. For the reasons set forth below, Defendant's Motion is DENIED.

**I.    Background**

This suit involves the underwriting and sale of municipal bonds issued by the Industrial Development Authority ("IDA") of the City of Moberly, Missouri in July 2010. The bond offering was intended to finance a sucralose processing plant in Moberly that a company called Mamtek International would purportedly construct and operate. Mamtek made a number of representations to the IDA and Moberly regarding the viability of this project. It is alleged that the IDA hired Defendant Morgan Keegan to investigate Mamtek's claims and to underwrite and sell the bonds. Morgan Keegan hired Defendant

Armstrong Teasdale to assist with the investigation. Mamtek ultimately failed, and the bonds are now worthless. Plaintiff alleges that Morgan Keegan and Armstrong Teasdale failed to exercise due diligence in its investigation of Mamtek, and that Morgan Keegan made false representations as to Mamtek's viability in its Official Offering Statement and in the course of its role as seller and broker-dealer for the bonds.

An investigation into the reasons for the failed sucralose operation was subsequently conducted by the Missouri House of Representatives' bipartisan House Interim Committee on Government Oversight and Accountability. The purpose of the Committee's investigation was "to determine what went wrong with Mamtek, and, if something went wrong that could be prevented, to suggest government policies to prevent such a situation from happening again." [Doc. # 90-1 – Excerpt from House Report]. One of the twelve legislators investigating the case was Representative Christopher Kelly, the husband of the undersigned. Hearings before the Committee included testimony by persons listed on the parties' Rule 26 disclosures in this case. During the hearings, Representative Kelly made statements such as "Parenthetically, I've always thought, and I'm not asking for a comment, that the whole revenue bond concept is an incredible scam and it's coming to flower here," and "The people I find fault with are the bond advisors and the bond lawyers." [Doc. # 99 – Defendant's Reply]. Representative Kelly also signed a Report authored by the Committee. This Report discusses why the Mamtek project failed and proposes legislative solutions to avert future failures of this sort. Plaintiff has referenced this Report in the interrogatories propounded to Defendants, and Plaintiff's expert on class certification has stated he will rely on the Report. Morgan

2

Keegan asserts that because of the relationship between Representative Kelly and the undersigned, recusal in this case is appropriate.

**II. Discussion**

**A. Recusal under § 455(a)**

A federal judge shall recuse herself "in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "By enacting section 455(a), Congress sought to eradicate not only actual, but also the appearance of impropriety in the federal judiciary." *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir.2002). Judges bear a "fundamental ethical duty… to police his or her own disqualification status." *Sw. Bell Tel. Co. v. F.C.C.*, 153 F.3d 520, 521 (8th Cir. 1998) (Hansen, J., in chambers). Whether recusal is required under § 455 is up to the sound discretion of the district court. *Moran*, 296 F.3d at 648.

The standard for determining whether recusal is required under § 455(a) is objective. A judge is required to recuse herself "if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown." *Am. Prairie Const. Co. v. Hoich*, 560 F.3d 780, 789 (8th Cir. 2009) (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)). Judges are presumed to be impartial unless the party seeking recusal proves otherwise. *Id*. at 790. The movant's "allegations [must] meet the substantial showing necessary to establish a clear and indisputable right to recusal and a nondiscretionary duty on the district judge to disqualify himself." *In re Kansas Pub. Employees Ret. Sys.*, 85 F.3d 1353, 1365 (8th Cir. 1996).

Morgan Keegan requests recusal only under § 455(a). In addition to § 455(a), § 455(b) "spells out the circumstances in which a judge must disqualify himself because of his relation to participants in a case." *Id.* at 1359. Under this subsection, a judge shall recuse herself when, *inter alia*, her "spouse… has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding," § 455 (b)(4); or where her spouse "(i) is a party to the proceeding, or an officer, director, or trustee of the party; (ii) is acting as a lawyer in the proceeding; (iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; (iv) is to the judge's knowledge likely to be a material witness in the proceeding." 28 U.S.C. § 455(b)(5).

Plaintiff argues that Morgan Keegan is attempting to use § 455(a) to circumvent the specific limitations of § 455(b), which require recusal in enumerated instances involving the interests of family members in the case. In support of this claim, Plaintiff relies on *Liteky v. United States*, 510 U.S. 540, 114 S. Ct. 1147 (1994), in which the majority stated that "when one of those aspects addressed in (b) is at issue, it is poor statutory construction to interpret (a) as nullifying the limitations (b) provides, except to the extent the text requires." *Id*. at 553 n.2, 1156 n.2. Justice Scalia offered the example that it would be wrong "to hold that 'impartiality could reasonably be questioned' simply because one of the parties is in the fourth degree of relationship to the judge," when "455(b)(5), which addresses the matter of relationship specifically, ends the disability at the third degree of relationship, and that should obviously govern for purposes of § 455(a) as well." *Id*. at 553, 1156. Plaintiff claims that because certain reasons for recusal

4

based on spousal interest are enumerated in § 455(b), § 455(a) cannot be used to require recusal for other reasons pertaining to a judge's spouse. Morgan Keegan argues that § 455(b) does not provide the only reasons for recusal on the basis of a family member's relation to the case, and that additional justification for recusal where a spouse is involved may be had when, under § 455(a), a reasonable person who knew the circumstances would question the judge's impartiality. Morgan Keegan argues that contrary to the hypothetical set out in *Liteky*, Representative Kelly's involvement in the investigation merely provides an additional reason for recusal, and does not nullify or alter the recusal requirements of § 455(b).

The Court does not need to resolve this question of statutory interpretation here, because even assuming that § 455(a) does provide a separate avenue for addressing the appearance of partiality in instances involving a judge's spouse not covered by § 455(b), recusal would still not be appropriate under § 455(a). Morgan Keegan relies primarily on two cases in support of its claim of recusal. In *Moran v. Clarke*, 296 F.3d 638 (8th Cir. 2002), one of the defendant board members was the social acquaintance of the judge. The Eighth Circuit remanded the case to the district court to consider recusal under § 455(a) because "[t]he image of one sitting in judgment over a friend's affairs would likely cause the average person in the street to pause." *Id*. at 649. In *Matter of Hatcher*, 150 F.3d 631 (7th Cir. 1998), the Seventh Circuit held that recusal was warranted in order to avoid the appearance of partiality where the judge's son, as a third-year law student, had assisted in an earlier prosecution of a member of same gang as the defendant. The court emphasized that this was "the rare case where the earlier proceedings were so close to the

5

case now before the judge that recusal under § 455(a) was the only permissible option," because "the indictments charged virtually the same offenses, committed by the same people," and the defendant in the son's case was the unindicted co-conspirator in the judge's case and vice versa. *Id*. at 638.

The instant case differs from both *Moran* and *Hatcher* because there is no direct interest of Representative Kelly in any of the proceedings before this Court. "[W]here an interest is not direct, but is remote, contingent or speculative, it is not the kind of interest which reasonably brings into question a judge's partiality." *Sensley v. Albritton*, 385 F.3d 591, 600 (5th Cir. 2004) (quoting *In re Drexel Burnham Lambert, Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988), *cert. denied*, 490 U.S. 1102, 109 S. Ct. 2458 (1989)). Unlike the friend in *Moran* and the family member in *Hatcher*, Representative Kelly is not a party or associated with counsel for a party in this case. There is no interest he could have in the outcome of this litigation, unless it is an interest in having his wife agree with him. The Court "would have to speculate from [Representative Kelly's involvement in the investigation] that [Representative Kelly] desires a certain outcome in this case (regardless of the merits), and that [the undersigned] is willing to set aside [her] oath to be impartial in order to please" her husband. *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 353 F. Supp. 2d 1160, 1177 (D. Utah 2005). The Court must emphasize that it is an outdated view to say that simply because the husband expresses an opinion on a topic, his view must necessarily influence that of his wife.

Rather, this situation bears more similarity to cases that have found recusal was not required, even though there existed a connection between the friend or family

member and one of the parties in the case. For instance, in *Sensley v. Albritton*, 385 F.3d 591 (5th Cir. 2004), the judge's wife was an at-will employee in the District Attorney's office, and so, the plaintiff argued, the judge and his wife had an incentive to ensure the DA's success. *Id.* at 599-600. The Fifth Circuit held that the judge was not required to recuse himself under § 455(a) or (b) because there was "no evidence of any direct connection" between the judge and the case and the judge had "no direct financial interest in the outcome of the case." *Id.* at 599. The same can be said here. Similarly, in *United States v. Ibarra-Castaneda*, 396 F. Supp. 2d 1004 (N.D. Iowa 2005), the judge's spouse held stock in the bank that served as mortgagee for the defendants' residences and commercial lender of loans guaranteed by the defendants. The district court determined that recusal based on the appearance of partiality was not required because the bank was not a party to the proceeding and was only implicated to the extent that the defendants' sentencing might have collateral consequences on the bank's financial interests. *Id.* at 1007. *See also In re Kansas Pub. Employees*, 85 F.3d at 1365 (there was no appearance of a conflict of interest in violation of § 455(a) where the judge's daughter was going to be employed by plaintiff's counsel's firm as salaried first-year associate but would not be personally involved in the litigation, and where defendant had known for nearly a year that the daughter was a summer associate and would be joining plaintiff's counsel's firm, but only brought second motion to recuse once it faced a "potentially fatal" summary judgment motion); *United States v. Vazquez-Botet*, 453 F. Supp. 2d 362, 373 (D.P.R. 2006) (recusal for partiality was not required where judge's wife had previously represented two potential government witnesses, one of them in the same case, but where

7

neither potential witness was a party, representation had ended before indictments and before the case was assigned to the judge, and the wife had never appeared in the case); *In re Drexel Burnham Lambert*, 861 F.2d at 1314 (recusal for appearance of partiality was not required where the judge's wife had an interest in the sale of a business in which defendant was to act as "best efforts" underwriter or "placement agent" of the debt to be issued); *Salt Lake Tribune*, 353 F. Supp. 2d at 1177 (recusal was not required in a case involving the ownership of a newspaper, where the judge had expressed gratitude to a senator for supporting his nomination, and the senator had supported the sale of the newspaper). In these cases, the connection between the friend or family member and one of the parties, although tenuous, was still more direct than it is in the instant case, yet recusal was not required in these cases.

Morgan Keegan argues that, since Plaintiff's expert has stated he will rely on the Committee's Report, the reliability and accuracy of the report signed by Representative Kelly may be called into question to determine whether the expert's opinion is based on "sufficient facts or data" under Federal Rule of Evidence 702(b), or whether it may be reasonably relied upon by experts under Rule 703. Plaintiff, in contrast, states that the expert relied primarily on the exhibits to the Report, which are part of the public record. Regardless of the extent of the expert's reliance on the Report, the connection between Representative Kelly's participation in the investigation that led to the Report and the Court's possible need to rule on the evidentiary sufficiency of the Report as part of its *Daubert* analysis is too tenuous to support an inference of partiality. The claim is that should it become necessary for the undersigned to evaluate the sufficiency of a report

8

signed by her husband, her impartiality would be implicated in the mind of a reasonable person. This argument "layer[s] several speculative premises on top of another to reach a speculative conclusion." *Sensley*, 385 F.3d at 600.

What's more, the Report expresses policy recommendations, not legal analysis. The Report addresses why the Mamtek project failed, and suggests possible legislative solutions to avert similar prolems in the future. [Doc. # 90-2 – Excerpts of Report]. To the extent that the Report addresses Morgan Keegan and Defendant Armstrong Teasdale specifically, it states, "The committee believes that third-party professionals… involved in municipal or local bond offerings *should* have a *professional* duty to investigate the viability of the underlying project – and to include such a report in the Official Statement." *Id.* (emphasis added). The Report then recommends legislation "codifying the duty of third-party professionals in the municipal bond process to investigate the viability of the underlying project…" *Id.* This statement expresses the opinion of the Committee as to the preferable *professional* duty of third-party professionals like Morgan Keegan and recommends that this professional duty be codified. However, Defendants' professional duty is distinct from their common-law legal duty, which is the question before the Court in this lawsuit. To the extent that the Report expresses an opinion as to Defendants' moral culpability, this is not coextensive with a determination of their legal liability. The Court believes that a reasonable person on the street would recognize this distinction, and as such cannot say that there would be an untoward appearance of partiality if the Court reviews the Report in the course of ruling on the sufficiency of Plaintiff's expert.

Morgan Keegan also argues that recusal is warranted because Representative Kelly has "abundant extra-judicial and non-public information regarding the factual allegations in this case." [Doc. # 99 – Defendant's Reply]. This, it argues, merits the undersigned's recusal under the "extrajudicial source" doctrine. Firstly, Defendants did not introduce this argument in their initial Motion for Recusal, and it is well established that new arguments may not be introduced in a reply brief. *See McGhee v. Pottawattamie Cnty., Iowa*, 547 F.3d 922, 929 (8th Cir. 2008). Additionally, Defendants have cited no legal authority to support their claim that Representative Kelly's investigation of the case constitutes an extrajudicial source on which the undersigned will rely such that recusal is merited. Even if this argument had been properly introduced, the Court's research indicates that the extrajudicial source doctrine has no bearing on the case at this stage of the proceedings.

The extrajudicial source doctrine requires recusal where a reasonable person would consider the judge to have evinced an improper disposition toward a party resulting from consideration of "a source outside the judicial proceeding at hand," *Liteky*, 510 U.S. at 545, 114 S. Ct. at 1152, such that it appears the judge's opinion was based on information "other than what the judge learned from his participation in the case." *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S. Ct. 1698, 1710 (1966). The mere existence of an extrajudicial source does not necessarily establish bias. *Liteky*, 510 U.S. at 554, 114 S. Ct. at 1157. The Supreme Court has explained, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They

10

*may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* at 555, 1157 (emphasis in original).

The Supreme Court's focus on the biased *result* of a judge's consideration of extrajudicial information indicates that the extrajudicial source doctrine applies after the fact of the proceedings, not presumptively in advance of any dispositive rulings. District courts to consider the extrajudicial source doctrine have done so after proceedings from which bias might be inferred had already taken place. *See, e.g.*, *Ryan v. Clarke*, 281 F. Supp. 2d 1008, 1033 (D. Neb. 2003) *aff'd*, 387 F.3d 785 (8th Cir. 2004) (judge held meetings in his chambers with family members of victims prior to imposing death sentence on defendant; the court held that because nothing was said at meeting that judge did not know through trial and there was no structural error from which bias could be presumed, these meetings did not count as an "extrajudicial source" requiring recusal); *Tripp v. Executive Office of the President*, 104 F. Supp. 2d 30, 35 (D.D.C. 2000) (holding that the movant failed to demonstrate "the appearance of prejudice based on an extrajudicial source as required for recusal under Section 455(a)" from a court's findings on a particular issue); *Twomey v. Roper*, 2009 WL 1393974 at *5 (E.D. Mo. May 15, 2009) (disqualification on the basis of judicial bias requires a showing of the judge's "improper[] reli[ance] on an extrajudicial source" that "results in an *opinion on the merits* on some basis other than what the judge learned from the judge's participation in a case.") (emphasis added). The Tenth Circuit has emphasized that recusal under § 455(a) must be based on "outward manifestations and reasonable inferences drawn therefrom,"

11

*United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993), rather than "unsubstantiated suggestions or personal bias or prejudice." *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659-60 (10th Cir. 2002). The "mere fact… that a judge has general familiarity with the facts of a case does not require recusal." *Tonkovich v. Kansas Bd. of Regents*, 924 F. Supp. 1084, 1088 (D. Kan. 1996) (citing *Cooley*, 1 F.3d at 993).

The Court finds the above reasoning persuasive in this case. In order to infer bias resulting from the consideration of an extrajudicial source, some "outward manifestation," such as proceedings on a dispositive issue, must have taken place. At this stage, no proceedings which implicate the Report or investigation have yet occurred. As such, Morgan Keegan cannot point to a specific instance in which the undersigned appeared to rely on an extrajudicial source such that bias could be inferred. The mere fact that extrajudicial sources exist, the content of which Morgan Keegan asserts is known by the undersigned merely because of her relation to Representative Kelly, is insufficient to require recusal under the extrajudicial source doctrine.

For the above reasons, the Court does not find that there would be an appearance of partiality for the undersigned to continue to preside over the instant case.[1]

**B. Timeliness**

Plaintiff also argues that Morgan Keegan's Motion to Recuse is untimely. The law is clear that "a claim for judicial recusal under section 455 'will not be considered

---

[1] Morgan Keegan states that it does not anticipate that Representative Kelly will be called as a witness in this case. Should he be, any issue of recusal is appropriately addressed at that time.

12

unless timely made.'" *Am. Prairie Const.*, 560 F.3d at 790 (quoting *Fletcher*, 323 F.3d at 664). For such a motion to be considered timely, the party must bring its motion "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim." *Id*. *See also Sentis Grp., Inc., Coral Grp., Inc. v. Shell Oil Co*., 559 F.3d 888, 904 (8th Cir. 2009) (motion for recusal filed nearly six months after the hearing was untimely). Plaintiff asserts that Morgan Keegan was aware of Representative Kelly's involvement in the investigation since November 2011 and knew Plaintiffs were in possession of the Report seven months before they filed the instant motion to recuse. Morgan Keegan argues that it did not bring the motion to recuse until it was clear Plaintiff would be relying on the Report.

The Court need not determine at this time whether the motion was timely brought, because even if it were, recusal is not warranted for the reasons stated above.

## III.  Conclusion

Just as a judge has a duty to recuse herself if necessary, she likewise has a duty not to recuse herself if recusal is not merited. *See Holloway v. United States*, 960 F.2d 1348, 1350 (8th Cir. 1992) ("Judges have an affirmative duty… not to disqualify themselves unnecessarily.") (quoting *Davis v. Commissioner*, 734 F.2d 1302, 1303 (8th Cir. 1984) (per curiam)). Morgan Keegan has not met its high burden of showing that recusal under § 455(a) is warranted here. Therefore, the Motion to Recuse [Doc. # 82] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: August 1, 2013  
Jefferson City, Missouri