IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN W. CROMEANS., JR., Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:12-CV-04269-NKL |
| v. | ) ) | |
| MORGAN KEEGAN & CO., INC., et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

The Court granted partial summary judgment in favor of Defendant Armstrong Teasdale, LLP on November 5, 2013, on Plaintiff John Cromeans' claims for legal malpractice and negligent misrepresentation. *See* Docs. 93 and 170. Cromeans now moves to vacate the grant of partial summary judgment. Doc. 455. The motion is denied.

**I.  Discussion**

    **A.  Legal Malpractice**

In granting summary judgment to Armstrong Teasdale on the legal malpractice claim, the Court found Cromeans' evidentiary submissions failed to show an attorney-client relationship between Armstrong Teasdale and Morgan Keegan. Specifically, there was no evidence that Morgan Keegan intended Armstrong Teasdale's services to benefit the bond purchasers. Doc. 170, p. 8.  The Court explained that ordinarily, an attorney-client relationship must exist before a plaintiff can recover for legal malpractice against

an attorney.  Doc. 170, p. 3 (citing *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900 S.W.2d 624, 627 (Mo. 1995) (en banc); *see also Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 176-77 (Mo. Ct. App. 1996)).  But this element of a legal malpractice claim may be satisfied if a non-client plaintiff can show that "the attorney-defendant performed services specifically intended by a client to benefit [the] plaintiff[]."  *Id.,* pp. 3-4 (citing *Donahue*, 900 S.W.2d at 628-29).  If specific intent is established, a six-factor balancing test is then used to determine, "[a]s a separate matter, the question of legal duty of attorneys to non-clients." *Id.,* p. 4.

As a policy matter, expanding legal malpractice to include actions brought by non-clients could extend liability "to an unlimited class of individuals."  *Id.,* p. 4 (citing *Donahue*, 900 S.W.2d at 628).  But "if the transaction was specifically intended to benefit the plaintiff, liability is not extended to an unlimited class."  *Id.*  The existence of the client's specific intent to benefit the plaintiff is therefore a condition precedent to the application of the balancing test.  *Id.* at pp. 4-5 (citing *Donahue*, 900 S.W.2d at 628-29; *Johnson v. Sandler, Balkin, Hellman, & Weinstein, P.C.*, 958 S.W.2d 42, 49 (Mo. Ct. App. 1997); and *Merchs. Bonding Co. v. Noland*, No. 2:10-CV-04095-NKL, 2010 WL 3584017, at *3 (W.D. Mo. Sept. 7, 2010)).

Accordingly, to avoid summary judgment on the legal malpractice claim, Cromeans was required to show that Morgan Keegan intended Armstrong Teasdale's services to benefit him.  Cromeans failed to do so, and in the context of his current motion to vacate, points to no newly-available evidence to justify reconsideration. Rather, he contends that a different test applies:  He argues that "[b]ecause there is

2

substantial evidence that Armstrong Teasdale **knew** that the Official Statement contained false and misleading statements, there was a legal duty flowing from Armstrong Teasdale to the bond purchasers[,]" a duty Armstrong Teasdale breached "**and specific intent** which Armstrong Teasdale recognized[.]"  Doc. 456, p. 5 (emphasis in original)….. "Accordingly, there is substantial evidence that Armstrong Teasdale (i) had the specific intent to inform Morgan Keegan of any known false or misleading statements contained in the Official Statement and (ii) breached such duty[.]"  *Id.*  This test suggested by Cromeans does not comport with *Donahue* and Cromeans offers no authority that supersedes *Donahue.*  The three cases he cites in support, *see* Doc. 456, p. 2, are federal securities cases, and do not address a non-client's claim of liability for legal malpractice.

Cromeans' argument that Armstrong Teasdale had knowledge that the representations were false or misleading; understood it had a duty to inform Morgan Keegan of any misleading or omitted material facts, and can take no refuge in client-confidentiality rules, has no bearing on whether *Morgan Keegan* specifically intended Armstrong Teasdale's services to benefit Cromeans. This is the threshold showing required by *Donahue* and until that threshold is satisfied, other evidentiary issues are not relevant.

### B. Negligent Misrepresentation

In granting summary judgment on Cromeans' claim of negligent misrepresentation, the Court explained that the essential elements of such a claim include justifiable reliance by a plaintiff on information supplied by a defendant.  Doc. 170, pp. 8-9 (citing *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 288

3

(Mo. Ct. App. 2008)). In granting summary judgment to Armstrong Teasdale, the Court held that Cromeans had failed to show that he relied on any misrepresentation or omission made by Armstrong Teasdale. Doc. 170, p. 9.

The Court further noted that claims for negligent misrepresentation against law firms are routinely rejected where the firms relied on facts provided by clients and clearly stated that they were not asked and did not attempt to independently verify those facts. *Id.* at p. 9 (citing *Nolte v. Pearson*, 994 F.2d 1311, 1316-18 (8th Cir. 1993); *Buford White Lumber Co. Profit Sharing & Sav. Plan & Trust v. Octagon Props., Ltd.*, 740 F. Supp. 1553, 1563 (W.D. Okla. 1989); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 794 (Tex. 1999) (ruling that a law firm may limit its liability for negligent misrepresentation "by setting forth (1) limitations as to whom the representation is directed and who should rely on it, or (2) disclaimers as to the scope and accuracy of the factual investigation or assumptions forming the basis of the representation or the representation itself.")).

Armstrong Teasdale communicated an express disclaimer to Morgan Keegan, notifying Morgan Keegan that Armstrong Teasdale had made no attempt to independently verify the accuracy of the documents which Armstrong Teasdale used to prepare the Official Statement. Cromeans read a bullet point memo sent to him by Morgan Keegan, which purportedly contained statements prepared by Armstrong Teasdale. But that bullet point memo omitted the express disclaimer that Armstrong Teasdale previously communicated to Morgan Keegan. Although Cromeans was not given the disclaimer, the decision to omit it was made by Morgan Keegan, not Armstrong

4

Teasdale. The Court concluded there was no reason to impute that decision to Armstrong Teasdale. Doc. 170, pp. 9-10.

In asking the Court to vacate, Cromeans restates his previous arguments. He also points to *MidAmerican Bank & Trust Co. v. Harrison,* 851 S.W.2d 563, 564 (Mo. Ct. App. 1993). Doc. 456, p. 7. In *MidAmerican,* the defendant-accountant prepared and delivered a financial statement to his client, who in turn delivered it to the plaintiff, who considered it in approving a loan to the client. 851 S.W.2d at 563-64. The plaintiff received and considered the defendant-accountant's statement, but the defendant-accountant was held not liable because he did not know his statement would be relied on by such a party. *Id.* at 565. *MidAmerican* does not persuade the Court to draw a different conclusion with respect to Cromeans' negligent misrepresentation claim. Armstrong Teasdale used certain documents to prepare the Official Statement and stated it had not reviewed the accuracy of those documents, clearly disclaiming any responsibility for the accuracy of the information. Therefore, there is no evidence that Armstrong Teasdale knew Cromeans would rely on the accuracy of those documents, given Armstrong Teasdale's specific disclaimer. Since it is the information in those documents which Cromeans argues is a misrepresentation, Cromeans cannot prove his negligent misrepresentation claim.

Cromeans also points to the Restatement (Second) of Torts § 552(2) (1977) on third-party liability, cited by the Missouri Court of Appeals in *MidAmerican.* Doc. 456, p. 7. Section § 552(2) provides that liability for negligent misrepresentation is limited to loss suffered:

5

> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
>
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

The *MidAmerican* court explained that such liability is limited to "narrow confines," and that the Restatement

> takes [a] moderate position[,] "allowing only a restricted group of third parties to recover for pecuniary losses attributable to inaccurate financial statements." [*First Nat'l Bank of Commerce v. Monco Agency Inc.*, 911 F.2d 1053, 1058 (5th Cir.1990)]. …While the Restatement view allows liability in limited cases where the accountant is not in privity with the third party, liability is not extended to "every reasonably foreseeable consumer of financial information." *Id.* at 1060.

851 S.W. 2d at 564-65. The narrow confines of § 552(2) liability acknowledged in *MidAmerican* simply echo the approaches to liability found in *Ryann Spencer* and *Nolte*, discussed above and already considered by the Court when granting summary judgment to Armstrong Teasdale.

## II. Conclusion

Plaintiff Cromeans' motion to vacate the order granting partial summary judgment in favor of Defendant Armstrong Teasdale, LLP, Doc. 455, is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: October 20, 2014
Jefferson City, Missouri