IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN W. CROMEANS., JR., Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:12-CV-04269-NKL |
| v. | ) ) | |
| MORGAN KEEGAN & CO., INC., et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

The Court previously granted partial summary judgment in favor of Defendant Armstrong Teasdale, LLP on Plaintiff John Cromeans' claims for legal malpractice and negligent misrepresentation. *See* [Docs. 93 and 170]. Cromeans filed a motion to vacate the order [Docs. 455 and 545] which the Court denied. Upon further consideration, the Court grants the motion to vacate, in part. It finds that summary judgment should be granted on the malpractice claims, but should not be granted on Cromeans' negligent misrepresentation claim.

**I.     Discussion**

**A.     Legal Malpractice**

In granting summary judgment to Armstrong Teasdale on the legal malpractice claim, the Court recognized that an attorney-client relationship must ordinarily exist before a plaintiff can recover for legal malpractice against an attorney. But this element of a legal malpractice claim may be satisfied if a non-client plaintiff can show that the

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| JOHN W. CROMEANS., JR., Individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:12-CV-04269-NKL |
| v. | ) ) | |
| MORGAN KEEGAN & CO., INC., et al., | ) ) | |
| Defendants. | ) | |

**ORDER**

The Court previously granted partial summary judgment in favor of Defendant Armstrong Teasdale, LLP on Plaintiff John Cromeans' claims for legal malpractice and negligent misrepresentation. *See* [Docs. 93 and 170]. Cromeans filed a motion to vacate the order [Docs. 455 and 545] which the Court denied. Upon further consideration, the Court grants the motion to vacate, in part. It finds that summary judgment should be granted on the malpractice claims, but should not be granted on Cromeans' negligent misrepresentation claim.

**I.     Discussion**

    **A.     Legal Malpractice**

In granting summary judgment to Armstrong Teasdale on the legal malpractice claim, the Court recognized that an attorney-client relationship must ordinarily exist before a plaintiff can recover for legal malpractice against an attorney. But this element of a legal malpractice claim may be satisfied if a non-client plaintiff can show that the

attorney performed services specifically intended by a client to benefit the plaintiff. *Donahue v. Shughart, Thomson & Kilroy, P.C.,* 900 S.W.2d 624, 629 (Mo. banc 1995). If specific intent is established, a six-factor balancing test is then used to determine, as a separate matter, the question of legal duty of attorneys to non-clients. *Id*. Because Cromeans' evidentiary submissions failed to show that Morgan Keegan specifically intended Armstrong Teasdale's services to benefit the bond purchasers, the Court granted summary judgment to Armstrong Teasdale on the legal malpractice claim.

In his motion to vacate, Cromeans argues that demonstrating the client's specific intent is not a necessary element of a legal malpractice claim when the attorney has actual knowledge that the clients' representations in offering documents are false or misleading, or when the attorney falsely states that he or she is not aware of any facts that contradict the offering statement. But *Donahue* contained no such exception and none of the cases cited by Cromeans[1] involved malpractice claims. Because Cromeans has not produced evidence to show that Morgan Keegan intended to benefit the bond purchasers when it retained Armstrong Teasdale to prepare the offering statement, his claim for malpractice must fail.

Therefore, the Court denies Cromeans' motion to vacate the grant of summary judgment in favor of Armstrong Teasdale on the legal malpractice claim.

B.  **Negligent Misrepresentation**

Justifiable reliance is a necessary element of all negligent misrepresentation

---

[1] *SEC v. Frank,* 388 F.2d 486 (2nd Cir. 1968), *Rospatch Securities Litigation v. Rospatch Corp.,* 760 F.Supp. 1239 (W.D. Mich. 1991, and *Azrielli v. Cohen Law Offices,* 21 F.3d 512 (2nd Cir. 1994).

claims. *Ryann Spencer Grp., Inc. v. Assurance Co. of Am.*, 275 S.W.3d 284, 288 (Mo. Ct. App. 2008). In granting summary judgment to Armstrong Teasdale on Cromeans' negligent misrepresentation claim, the Court found that Cromeans could not prove reasonable reliance. Because Morgan Keegan did not hire Armstrong Teasdale to investigate the facts contained in the offering statement and Armstrong Teasdale disclaimed any responsibility for the accuracy of those facts, the Court concluded that justifiable reliance could not be shown. When making its decision, however, the Court overlooked evidence that Armstrong Teasdale made an affirmative misstatement of fact when it said "no facts have come to our attention which lead us to believe that the Official Statement contains" misrepresentations or omitted material facts. [Doc. 456, p. 5].

In his motion to vacate, Cromeans cites evidence that Armstrong Teasdale had a contract with the Missouri Department of Economic Development (DED) to assist DED in attracting Chinese businesses to Missouri. [*Id.*, pp. 3-4; Doc. 492, pp. 4-5]. When DED wanted a background check on a Chinese company, Mamtek, it contacted Armstrong Teasdale's agent, Mr. Li, to obtain whatever information he could about Mamtek. Mr. Li is a non-lawyer based in China, who was retained by Armstrong Teasdale to fulfill Armstrong Teasdale's contract with DED. Mr. Li made a phone call and did an internet search. In April 2010, Mr. Li reported to DED and to Maria Desloge, who was Armstrong Teasdale's Associate Director of the China Trade and Investment Office, that Mamtek's plant in Fujian Province, China, never started to manufacture, and that it could not because it did not meet the "zoning" requirements for that location. The

3

offering statement, however, stated that the plant was operational.

Citing the Restatement (Second) of Torts, § 552, Cromeans argues that Armstrong Teasdale is liable to the bond purchasers because Armstrong Teasdale knew that some statements in the offering statement were false. Section §552 provides, in relevant part:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
>
> > (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> >
> > (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. …

The national trend is to recognize a cause of action by non-clients for negligent misrepresentations by professionals, including lawyers, if the requirements of § 552 of the Restatement are satisfied. *See* Rest. (Second) of Torts, § 552, Information Negligently Supplied for the Guidance of Others (and cases cited therein); and *McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests,* 991 S.W.2d 787, 792-93 (Tex. 1999) (stating that a "number of jurisdictions have held that an attorney can be liable to a nonclient for negligent misrepresentation, as defined in § 552 [of the

4

Restatement of Torts]," in connection with the preparation of a variety documents and evaluations). *Cf.* Ronald E. Mallen and Jeffrey M. Smith, Legal Malpractice (2014 ed.), § 7.14, *Recurring Issues—Negligent Misrepresentation* ("General Principles. Growing authority over the last few decades has resulted in judicial acceptance that an attorney can be liable for a negligent misrepresentation… The tort…usually involves a claim by a nonclient."); and Paul C. Peterson and Ryan Myers, Will the Real Intended Third-Party Beneficiary Please Stand Up?, 80 Def. Couns. J. 11, 19 (Jan. 2013) (Although "courts have—for the most part—placed strict standing requirements on non-clients asserting general professional negligence claims against attorneys, courts have been more relaxed in permitting non-clients to assert negligent misrepresentation claims against attorneys."). *See also, Petrillo v. Bachenberg,* 655 A.2d 1354, 1361-62 (N.J. 1995) (attorney "had a duty not to misrepresent negligently the contents of a material document on which he knew others would rely to their financial detriment"); *Banco Popular North America v. Gandi,* 876 A.2d 253, 267-68 (N.J. 2005) (a non-client bank that relied on an attorney's opinion letter had a viable claim for negligent misrepresentation against the attorney when the attorney falsely stated in the opinion letter that he "was unaware of any material matters contrary to the representations and warranties" made by his client); M*ehaffey, Rider, Windholz & Wilson v. Central Bank Denver, N.A.,* 892 P.2d 230, 236-37 (Colo. 1995) (non-client stated claim for negligent misrepresentation against town's attorneys, whose opinion letters allegedly induced non-client to purchase bonds and contained material misstatements of fact; citing § 552 of the Restatement of Torts); *Lappostato v. Terk,* 71 A.3d 552, 567-68 (Conn. App. 2013) (affirming trial court's denial of motion to

set aside jury verdict in favor of plaintiff investor, or for judgment notwithstanding the verdict, on negligent misrepresentation claim, when jury could reasonably have found, based on ample evidence in the record, that plaintiff sustained a pecuniary loss by reasonably and justifiably relying on misrepresentations of decedent's attorney that attorney knew or should have known were false); *DeLuca v. Jordan,* 781 N.E.2d 849, 856-58 (Mass. App. 2003) (negligent misrepresentation claim could lie against attorney who, whether because of incompetence or lack of due care, made misrepresentations on which non-client justifiably relied; citing § 552 of the Restatement of Torts); *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.,* 192 S.W.3d 189, 202-4 (Tex. App. 2006) (defendant law firm could be liable to non-client purchasers for negligent misrepresentation, because attorney allegedly directly represented to them that the client-seller had complied with all procedures for converting apartment complex into condominiums and closing could proceed, which was not true; citing § 552 of the Restatement of Torts); *Molecular Technology Corp. v. Valentine,* 925 F.2d 910, 915-16 (6th Cir.1991) (stating that under Michigan law of negligent misrepresentation, an attorney owes a duty to third parties whom the attorney knows will rely on the information and whom the attorney should reasonably foresee will rely on the information); and *Horizon Financial v. Hansen,* 791 F. Supp. 1561, 1573-74*(N.D.Ga.1992) (concluding that attorneys' opinion letters support claim for negligent misrepresentation under both Pennsylvania and Georgia law, which both follow § 552 of the Restatement of Torts).

Missouri has followed § 552 since at least 1997. *See Ligon Specialized Hauler, Inc. v. Inland Container Corp.*, 581 S.W.2d 906, 908-09 (Mo. App. E.D. 1979) (citing

6

§ 552 "as a persuasive frame of reference for the cause of action" of negligent misrepresentation). Since *Ligon*, Missouri courts have extended the cause of action as defined by § 552 to negligent misrepresentations made by a variety of professionals, including accountants, *MidAmerican Bank & Trust Co. v. Harrison*, 851 S.W.2d 563, 564 (Mo. App. W.D. 1993); architects, contractors, and manufacturers, *Chubb Grp. Of Ins. Cos. V. C.F. Murphy and Assoc., Inc.*, 656 S.W.2d 766 (Mo. App. W.D. 1983); and real estate brokers, *see Springdale Gardens, Inc. v. Countryland Dev., Inc.*, 638 S.W.2d 813 (Mo. App. 1982); as well as sellers and their brokers, *see Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809 (Mo. App. E.D. 2002). Today, Missouri Courts regularly cite *Colgan v. Washington Realty Co.*, 879 S.W.2d 686, 689 (Mo. App. E.D. 1994), as adopting the § 552 test for the elements of a claim of negligent misrepresentation under Missouri law. *See e.g. Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo. App. E.D. 2002) (citing *Colgan* as "adopting the Restatement (Second) of Torts, Section 552 test for negligent misrepresentation").

The Court is aware of Missouri cases which in dicta state that a non-client must prove an intentional tort, such as fraud, in order to state a claim against a lawyer for a misrepresentation. *See, e.g., Roth v. La Societe Anonyme Turbomeca France,* 120 S.W.3d 764, 776 (Mo. Ct. App. 2003); *Macke Laundry Svc. Ltd. Partnership v. Jetz Svc. Co.*, 931 S.W.2d 166, 178 (Mo. Ct. App. 1996); *Mark Twain Kansas City v. Jackson,* 912 S.W.2d 536, 538 (Mo. Ct. App. 1995); *Kennedy v. Kennedy,* 819 S.W.2d 406, 410 (Mo. Ct. App. 1991); and *White v. McCoy Land Co.,* 101 S.W.2d 763 (Mo. App. 1936), *aff'd White v. Scarritt,* 111 S.W.2d 18 (Mo. 1937) (and cases cited therein). But none of these

cases actually held that a negligent misrepresentation claim was not permissible in Missouri. Instead, they were decided on other grounds or the issue of negligent misrepresentation was not even raised by the pleadings. Further, the above cases which were decided after the recognition of § 552 in Missouri, and did not mention § 552 or its approval by other Missouri courts. Finally, in the *Donahue* opinion the Missouri Supreme Court followed a national trend recognizing a cause of action for legal malpractice by non-clients. Given the national trend to recognize negligent misrepresentation claims against lawyers by non-clients and the consistent application of § 552 to other professionals, the Court predicts that Missouri courts will likewise recognize such a claim against lawyers by non-clients so long as the requirements of § 552 are satisfied.

Having concluded that Missouri will recognize Cromeans' negligent misrepresentation claim, the Court turns to the additional arguments made by Armstrong Teasdale as to why summary judgment should be granted on that claim. Armstrong Teasdale argues that Edward Li's information should not be attributable to it because Mr. Li was not an employee of Armstrong Teasdale. It also argues that Mr. Li's knowledge should not be imputed to the Armstrong Teasdale lawyer who actually prepared the offering statement because that lawyer did not have the information, and to impute the information to that lawyer would violate well-established principles of confidentiality.

Under Missouri law, a corporate entity "can obtain knowledge only through its agents and, under the well-established rules of agency, the knowledge of agents obtained

in the course of their employment is imputed to the corporation." *Wandersee v. BP Products North America, Inc.,* 263 S.W.3d 623, 629 (Mo. 2008) (citing *Packard Mfg. Co. v. Indiana Lumbermens Mut. Ins. Co.,* 203 S.W.2d 415, 421 (Mo. 1947), and Am. Jur. 2nd Corporations, § 1442)). *Wandersee* involved a claim against the defendant corporation, BP, for injurious falsehood based on BP's accusation that the plaintiffs had stolen some of BP's property. In that case, the court held that the knowledge of BP's agents was attributable to "BP itself" and that the plaintiffs had produced sufficient evidence, in the form of the knowledge of BP's agents, to support a jury finding that BP had actual knowledge of the falsity of a theft accusation. *Id.* at 629-30. *See also Major Cadillac, Inc. v. General Motors Corp.,* 280 S.W.3d 717, 722 (Mo. Ct. App. 2009) (current corporate counsel's lack of knowledge concerning presence of arbitration clauses in agreements drafted by previous corporate counsel did not limit GM's knowledge of the arbitration clauses; as corporation, GM's knowledge is not limited to one employee or agent). Therefore, the fact that the lawyer making the false statement did not know it was false does not show that Armstrong Teasdale lacked knowledge of the false statement.

Armstrong Teasdale also suggests that Mr. Li's knowledge could not be shared within the firm because of professional rules of confidentiality, and therefore, his knowledge should not be imputed to the lawyer who prepared the offering statement that contained the false information. This argument is unpersuasive because the information Mr. Li gathered was publicly available. Information available to the public is not subject to non-disclosure rules. *In re Lim,* 210 S.W.3d 199, 201-202 (Mo. 2007). Further, Mr. Li is not an attorney and never provided legal services to DED. And he did provide

9

the information to Maria Desloge, an Armstrong Teasdale employee.

Finally, Armstrong Teasdale argues it cannot be liable for negligent misrepresentation because Cromeans never read the Official Statement or anything Armstrong Teasdale wrote, and was at most an indirect recipient of statements made by Armstrong Teasdale. Section 552 does not require the recipient of the negligent misrepresentation to have received it directly from the defendant. *See* Restatement (Second) of Torts, § 552, comment g., *Information supplied directly and indirectly.* ("[D]irect communication of the information to the person acting in reliance upon it is not necessary.") In addition, Cromeans was given a bullet point summary of the offering statement prepared by Morgan Keegan and that summary contained the false information about the Mamtek project. A reasonable juror could therefore find the element of justifiable reliance satisfied.

In summary, there is evidence that Armstrong Teasdale, in the course of its professional duties, supplied information that it knew to be false to Morgan Keegan, knowing that Morgan Keegan intended to supply it to potential bond purchasers. Further, Cromeans arguably relied on that information and suffered loss as a result. This is sufficient to make a submissible claim for negligent misrepresentation under § 552. While Armstrong Teasdale disclaimed any responsibility for checking the accuracy of the facts, it could not with impunity include facts in the offering statement that it knew to be false, particularly in light of its affirmative statement that it knew of no facts contrary to the offering statement.

In view of the above, the order granting summary judgment to Armstrong

Teasdale on the negligent misrepresentation claim was in error and is vacated.

## II. Conclusion

Plaintiff Cromeans' motion to vacate, [Doc. 455], is granted as to Cromeans' negligent misrepresentation claims against Armstrong Teasdale. Cromeans' motion to vacate is denied in all other respects.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: December 1, 2014
Jefferson City, Missouri