IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| JOHN W. CROMEANS., JR., Individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) No. 2:12-CV-04269-NKL ) |
| v. | ) ) |
| MORGAN KEEGAN & CO., INC., et al., | ) ) |
| Defendants. | ) |

**ORDER**

Plaintiffs move to enforce the Joint Stipulation of Settlement and Release they executed with Defendants Morgan Keegan & Company, Inc., and Armstrong Teasdale. [Doc. 719.] Plaintiffs argue that Defendants have failed to comply with settlement terms, by failing to properly fund the payment of allowed claims. The motion is denied.

Morgan Keegan's motion to strike portions of the Affidavit of J. Timothy Francis [Doc. 726, p. 12] is denied as moot, and counter-motion to enforce the settlement is granted.

**I.  Background**

    **A.  The settlement agreement**

The settlement agreement provides that Defendants will pay "up to, and an amount not to exceed, $8,250,000 (the 'Gross Settlement Amount')" for attorney fees, costs, and class representative enhancements, as well as class member claims.[1] [Doc. 691-1, p. 11.]

The settlement agreement recognizes that the Moberly bonds were issued in series and bondholders variously received no, partial, or complete payments on their bonds, depending on

---

[1] The settlement class consists of all persons who purchased Moberly bonds from July 23, 2010 through September 30, 2011, and who have not opted out.

the series purchased. The specific amount each class member would be paid from the settlement was not known at the time of the settlement. [Doc. 691, p. 5, Plaintiffs' Motion for Preliminary Approval of Settlement and Plan of Allocation and for Approval of Notice.]

Based on what was known and unknown about their purchases and losses, class members were divided into six groups: Group 1 purchased Series B bonds (total par value of $2,495,000); Group 2 purchased Series A and C Bonds (total par value of $5,960,000); Group 3 members are Morgan Keegan purchasers of any Series of Bonds who sold their Bonds at a loss (believed to total $121,984); Group 4 members purchased any series of bonds and sold them at no loss; Group 5 are unknown, non-Morgan Keegan purchasers who sold Series B bonds for a loss at Broker-Dealers other than Moran Keegan; and Group 6 are unknown non-Morgan Keegan purchasers who sold series A & C bonds for a loss at Broker-Dealers other than Morgan Keegan.

The settlement agreement contains a chart to illustrate how the Net Settlement Fund (assumed to be $5,200,000) was to be distributed taking into account these six groups. Specifically, Section R(4) of the settlement provides:

> **Potential Settlement Payments**. Taking into account the realized and unrealized net losses of Group 1, Group 2, and Group 3, Plaintiffs have allocated the respective percentages of the Net Settlement Fund (assumed to be approximately $5,200,000) in column 8[2] in the chart below which is to be applied in accordance with the two-step process set forth below:

---

[2] Column 8 is the far right column of the chart, labeled "Percentage of Total losses."

| | Bonds Currently Held | Bonds Sold | Payments Received from Bond Trustee | Net Unrealized loss | Net Realized loss | Total Known losses | Percentage of Total losses |
|---|---|---|---|---|---|---|---|
| Group 1 (Series B) | 2,495,000 | - | $ 1,900,952 | $ 594,048 | - | $ 594,048 | 9.88% |
| Group 2 (Series A & C) | 5,960,000 | - | $ 663,966 | $ 5,296,034 | - | $ 5,296,034 | 88.09% |
| Bonds to be Tendered | 8,455,000 | | $ 2,564,918 | $ 5,890,082 | - | $5,890,082 | 97.97% |
| Group 3 (Series B & C) | - | 1,330,000 | Included | - | $ 121,948 | $ 121,948 | 2.03% |
| Totals | 8,455,000 | 1,330,000 | $ 2,564,918 | $ 5,890,082 | $ 121,948 | $6,012,030 | 100.00% |
| Group 4 (Series A B or C - No losses) | - | Irrelevant | Irrelevant | - | - | - | - |
| Group 5 (Series B - Non-Morgan Keegan Purchasers Purchasers) | - | Unknown | Unknown | - | Unknown | Unknown | Unknown |
| Group 6 (Series A & C - Non-Morgan Keegan Purchasers Purchasers) | - | Unknown | Unknown | - | Unknown | Unknown | Unknown |
| No Bonds to be Tendered | | Unknown | Unknown | - | Unknown | Unknown | Unknown |

**Step 1**: The dollar amount of any payment from the Net Settlement Fund that any Class Member in Group 1 or in Group 2 may receive will depend upon the actual number of Bonds (at par value) that are tendered to Morgan Keegan to "buy back" in connection with this Settlement, which will in turn affect the amount of the Gross Settlement Amount that Morgan Keegan and Armstrong Teasdale will be obligated to fund. This is so because if Bonds currently held by Class Members are not tendered to Morgan Keegan, then Morgan Keegan and Armstrong Teasdale are not obligated to fund the proportionate amount of Gross Settlement Amount represented by Bonds that are not tendered.

**Step 2**: The dollar amount of any payment from the Net Settlement Fund that any Class Member in Group 1 or in Group 2 may receive will further depend upon whether or not any Class Members in Group 5 or in Group 6 submit timely and proper Claim Forms. This is so because:

> (i) if any valid claims are submitted by Group 5 Class Members, this may increase the current total known losses on Series B Bonds, and hence may reduce accordingly the amount to which individual Series B Class Members may entitled from the Net Settlement Fund allocated to Series B Class Members as set forth in Column 8 for Group 1 (*i.e.,* 9.88%) in the chart above; and/or

> (ii) if any valid claims are submitted by Group 6 Class Members, this may increase the current total known losses on Bonds other than Series B Bonds, and hence may reduce accordingly the amount to which individual Class Members other than Series B Class Members may entitled from the from the Net Settlement Fund as set

3

forth in Column 8 for Group 2 (*i.e.,* 88.09%) in the chart above.

[*Id*., pp. 25-26.]

    **B.**    **The parties' dispute**

The Court approved payment of attorney fees, costs, and class representative enhancements. [Doc. 718.] After deducting that approved amount from the Gross Settlement Fund, a Net Settlement Fund of up to $5,185,317 remains for potential distribution to class members. Class members tendered a total of $6,970,000 in par value of bonds. Defendants divided $6,970,000 by the total par value of $8,455,000, yielding a figure of 82.44%, which Defendants argue is the percentage of the Net Settlement Fund they were required to and have paid.[3] They claim this is the maximum amount they must pay because the agreement assumes that there were $8,455,000 in bonds currently held at the time of the settlement and if that amount in bonds is not tendered, the amount of the Net Settlement Fund must be proportionately reduced.

Plaintiffs, however, explain that $890,000[4] in par value of bonds were sold by class members after the class period and are now held by non-class members. Therefore, the class members who sold the bonds cannot tender them, and the purchasers of those bonds who are not class members can make no claim and have no reason to tender them. Plaintiffs therefore argue the total par value of $8,455,000 must be reduced by $890,000. According to Plaintiffs' calculation, when the $6,970,000 in par value of tendered bonds is divided by $7,565,000, the

---

[3] Defendant Morgan Keegan filed suggestions in opposition to Plaintiffs' motion [Doc. 726], which Defendant Armstrong Teasdale adopts [Doc. 725].

[4] Defendants state that the figure is actually $880,000. In their reply suggestions, Plaintiffs state that the apparent $10,000 discrepancy can be dealt with after the Court rules on the merits of the motion. [Doc. 728, p. 2 n. 1.] Because the discrepancy is not central to the issue raised in Plaintiffs' motion, the Court need not address the discrepancy at this time.

4

percentage of the Net Settlement Fund Defendants must pay increases to 92.135%. Plaintiffs ask the Court to order Defendants to deposit an additional $411,618 for payment of claims in accordance with the settlement agreement.

## II.    Discussion

As discussed below, Plaintiffs have failed to establish entitlement to relief.

A settlement agreement is a contract. *Precision Investments, LLC v. Cornerstone Propane, LP,* 220 S.W.3d 301, 303 (Mo. 2007) (en banc) (citations omitted). Interpretation of a "settlement agreement is governed by the same principles applicable to any other contractual agreement, and the primary rule of construction is that the intention of the parties shall govern." *Andes v. Albano,* 853 S.W.2d 936, 941 (Mo. 1993) (en banc) (citations omitted). Generally, where the language of an agreement is plain and unambiguous, that language will be given full effect in the context of the agreement as a whole. *Id.* (citation omitted). A party requesting specific performance of a settlement agreement has the burden of proving the claim "by clear, convincing, and satisfactory evidence." *Precision Investments,* 220 S.W.3d at 303 (citation omitted).

Neither side requests reformation of the settlement agreement, and neither side asserts that there was a mutual mistake concerning the settlement and how it was intended to work given the ultimate facts learned by the parties. In fact, both sides argue that the agreement unambiguous. While the Court does not find the agreement as clear as represented by the parties, the Court does find that it unambiguously states Defendants are "not obligated to fund the proportionate amount of Gross Settlement Amount represented by Bonds that are not tendered." Based on this language, the Court concludes that the denominator should not be reduced by the non-tendered bonds Plaintiffs identify, even though those bonds effectively

5

cannot be tendered. The plain language of the settlement agreement expressly permits Defendants to pay less to the extent bonds are not tendered. A reservation or limitation on "'the scope of a settlement agreement must be clearly expressed'" in order to be part of the agreement. *Bath Junkie Branson, LLC v. Bath Junkie, Inc.,* 528 F.3d 556, 562 (8th Cir. 2008) (quoting *Fiegener v. Freeman-Oak Hill Health Sys.,* 996 S.W.2d 207, 211 (Mo. Ct. App. 1996)). Nowhere does the agreement provide that the value of non-tendered bonds may be used to modify the tender provision, or to otherwise effect a greater payment obligation. Similarly, the figure of $8,455,000, representing the value of bonds currently held and the denominator of the calculation at issue, is used in several places in the agreement. Nowhere does the agreement indicate that that figure is subject to change.

Furthermore, the parties expressly acknowledged unknowns in the agreement, such as the amount each class member paid for his or her bonds; whether there were non-Morgan Keegan purchasers who sold their bonds for a loss at Broker-Dealers other than Morgan Keegan (Group 5 and Group 6); and how much those non-Morgan Keegan purchasers' losses might be. And the parties expressly agreed to make no allocation of the estimated percentage of settlement recovery to Group 5 and Group 6 because "it is presently unknown if those Non-Morgan Keegan Purchasers suffered any losses at other Broker-Dealers." [Doc. 691-1, p. 24.] In contrast, the provision concerning tender is stated as a straightforward requirement.

Plaintiffs argue that the adjustment is implicit in the agreement's use of the phrase "bonds currently held," but that phrase does not change the analysis. The phrase is part of the formula the parties selected and agreed to use. As discussed above, the agreement does not provide that the denominator will be adjusted because bonds were sold after the class period, nor for any other reason.

6

Finally, Morgan Keegan moves to strike portions of the Affidavit of J. Timothy Francis upon which Plaintiffs relied. [Docs. 719-1, and 726, p. 12.] The motion to strike is denied as moot. Morgan Keegan also moves to enforce the payment terms of the settlement, according to the manner in which it has interpreted them and made payment. Except for the parties' disagreement concerning the non-tendered bonds, Plaintiffs do not dispute that Defendants have complied with their payment obligations under the settlement. Therefore, Defendants' motion to enforce is granted.

## II. Conclusion

Plaintiffs' Motion to Enforce Joint Stipulation of Settlement and Release [Doc. 719] is denied. Defendant Morgan Keegan's motion [Doc. 726] to strike portions of the Affidavit of J. Timothy Francis is denied as moot, and counter-motion to enforce the settlement is granted.

                                                                         s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 11, 2016
Jefferson City, Missouri